UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LHB INSURANCE BROKERAGE INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC.,<br><br>Defendants. | **ECF CASE**<br><br>Civil Case No: 1:08-CV-03095-LTS |
| LISA SWANSON, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP, INC., CITIGROUP GLOBAL MARKETS, INC. and CITI SMITH BARNEY,<br><br>Defendants. | **ECF CASE**<br><br>Civil Case No: 1:08-CV-03139-LTS |
| WEDGEWOOD TACOMA LLC, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY,<br><br>Defendants. | **ECF CASE**<br><br>Civil Case No: 1:08-CV-04360-UA |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DR. MICHAEL A. PASSIDOMO FOR CONSOLIDATION AND FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**

**Table of Contents**

I. PRELIMINARY STATEMENT .................................................................................................1

II. STATEMENT OF FACTS ........................................................................................................2

III. OVERVIEW OF APPLICABLE LAW ....................................................................................4

IV. THE ACTIONS SHOULD BE CONSOLIDATED .................................................................5

V. THE MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ........6

    A. The Movant's Motion to Serve as Lead Plaintiff Is Timely ..................................................7

    B. The Movant Is Believed to Have the Largest Financial Interest in the Relief Sought by the Class..................................................................................................................7

    C. The Movant Satisfies the Typicality and Adequacy Requirements of Rule 23 ..................8

        1. The Movant's Claims Are Typical of the Claims of the Class ..............................9

        2. The Movant Will Fairly and Adequately Represent the Interests of the Class ......9

VI. THE COURT SHOULD APPROVE THE MOVANT'S CHOICE OF LEAD COUNSEL...................................................................................................................10

VII. CONCLUSION ........................................................................................................................11

## Table of Authorities

### Cases

*Albert Fadem Trust v. Citigroup, Inc.*,
  239 F. Supp. 2d 344 (S.D.N.Y. 2002) ............................................................................. 5, 8, 9

*In re Olsten Corp Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...................................................................................... 6

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) ................................................................................................ 5

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................................................... 5, 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................... 9

*Sofran v. LaBranche & Co., Inc.*,
  220 F.R.D. 398 (S.D.N.Y. 2004) ..................................................................................... 8, 10

*Walker v. Deutsche Bank, AG*,
  No. 04 Civ. 1921 (DAB), 2005 WL 2207041 (S.D.N.Y. Sept. 6, 2005) ................................ 5

### Statutes

15 U.S.C. § 78u-4 ........................................................................................................................ 4
15 U.S.C. § 78u-4(a)(1) ............................................................................................................... 6
15 U.S.C. § 78u-4(a)(3) ....................................................................................................... *passim*
15 U.S.C. § 78u-4(e)(1) ............................................................................................................... 8
15 U.S.C. § 78u-4(e)(2) ............................................................................................................... 7

### Rules

Fed. R. Civ. P. 23(a) ................................................................................................................. 8, 9
Fed. R. Civ. P. 42(a) ................................................................................................................. 5, 6

Dr. Michael A. Passidomo ("Movant" or "Dr. Passidomo") respectfully submits this motion for: (i) consolidation of the Actions (described below); (ii) appointment of Lead Plaintiff in the Actions; and (iii) approval of his selection of Lead Counsel for the putative class. The Movant has purchased publicly-traded shares of Auction Rate Securities ("ARS") from Defendants and has suffered damages as a result of Defendants' alleged violations of the federal securities laws.[1]

I.    **PRELIMINARY STATEMENT**

This Court should consolidate the pending related securities class actions against Defendants (the "Actions").[2] Consolidating the Actions is appropriate because each action involves common factual and legal issues. This Court should also appoint the Movant as Lead Plaintiff for the class. First, the Movant's motion to be appointed Lead Plaintiff is timely under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). He is also the "most adequate" to serve as Lead Plaintiff. In fact, he satisfies each of the PSLRA's requirements for appointment as Lead Plaintiff. At this time, the Movant believes he has the "largest financial interest" in the relief sought by the class, having invested $10,950,000 in now illiquid ARS. Further, his claims against Defendants are typical of the claims of the other class members, and his interests are aligned with the interests of the class. Finally, the Movant has retained qualified

---

[1] The Movant has submitted a certification setting forth his Auction Rate Securities purchases. (*See* Exhibit C to the Affidavit of Richard A. Speirs in Support of the Motion of Dr. Michael A. Passidomo for Appointment of Lead Plaintiff and Lead Counsel (the "Speirs Aff.").) Movant is fully familiar with the facts and allegations in the cases filed in this District.

[2] The Actions all name Citigroup, Inc. and Citigroup Global Markets, Inc. as Defendants. However, *LHB Insurance Brokerage Inc. v. Citigroup, Inc.*, Case No. 1:08-CV-03095-LTS (S.D.N.Y.) ("LHB") does not name Citi Smith Barney, a division of Defendant Citigroup Global Markets, Inc., as a Defendant. (*See* Speirs Aff., Ex. A.)

counsel and will vigorously prosecute the Actions.

## II.   STATEMENT OF FACTS

Between March 27, 2003 and February 13, 2008 (the "Class Period"), Defendants were among the largest sellers and underwriters of ARS (also known as auction rate preferred stock, auction market preferred stock, variable rate preferred stock, variable rate preferred securities, money market preferred securities, periodic auction rate securities and auction rate bonds).  (¶¶ 1, 39.)[3]  Throughout the Class Period, Defendants represented to investors that ARS were highly safe and liquid investments that were equivalent to cash or money market funds.  (¶ 2.) However, unbeknownst to investors, ARS were complex, long-term financial instruments whose liquidity and stability was dependant on Defendants' artificial support and manipulation of the ARS market.  (¶¶ 3, 34.)  Thus, when Defendants and the other major-broker dealers withdrew their support of ARS auctions, the ARS market quickly collapsed.  (¶¶ 4, 39.)

ARS typically consist of municipal or corporate debt securities or preferred stocks which pay interest at rates set at periodic "auctions."  (¶ 20.)  They generally have long-term maturities, typically 30 years, and in the case of preferred stock, no maturity date.  (*Id.*)  ARS are auctioned at par value, and the return on investment to the investor and the cost of financing to the issuer are determined by the interest rate or dividend yield set through the auction.  (¶ 23.)  The method for auctioning such securities is described in the prospectus of the fund through which they are offered, though the formula is substantially similar for all securities offered as ARS.  (*Id.*) Generally, auctions are held every 7, 28, or 35 days, with interest paid at the end of each auction period. (¶ 24.)  The auction itself is of the type commonly referred to as a "Dutch" auction,

---

[3] "¶" references are to the complaint filed in *Swanson v. Citigroup, Inc.*, Case No. 1:09-CV-03139-LTS (S.D.N.Y.) ("Swanson").  (*See* Speirs Aff., Ex. B.)

where bids with successively higher interest rates are offered until all of the securities at the auction are sold. (¶ 25.)

At the end of the auction, the rate at which all of the securities are sold is set uniformly and called the "clearing rate." (¶ 26.) If there are not enough orders to purchase all the shares being sold at the auction, a failed auction occurs. (¶ 28.) In that situation, the rate is set to a "maximum rate" provided in the prospectus and none of the current shareholders can sell their shares. (*Id.*)

ARS were extremely profitable for Defendants who, throughout the Class Period, sold the securities to investors and underwrote them for issuers, for which they received, among other things, significant underwriting fees and compensation for operating the auction process. (¶ 32.) Defendants also bought and sold ARS for their own accounts. (*Id.*) Further, Defendants' financial advisors had a strong incentive to sell ARS to investors, as they were compensated for each ARS sale. (*Id.*)

In order to perpetuate the ARS market and sell as many securities as possible, Defendants represented to investors that ARS were equivalent to cash or money market funds; were highly liquid, safe investments for short-term investing; and were suitable for any investor with at least $25,000 of available cash and as little as one week in which to invest. (¶¶ 2, 33.) However, Defendants knew, but failed to disclose to investors, material facts about ARS, including that: ARS were not cash alternatives, but were instead, complex, long-term financial instruments with 30 year maturity dates, or longer; ARS were only liquid at the time of sale because Defendants were artificially supporting and manipulating the ARS market to maintain the appearance of liquidity and stability; and ARS would become illiquid as soon as Defendants stopped maintaining the ARS market. (¶¶ 3, 34.)

On February 13, 2008, 87% of all ARS auctions failed when Defendants and all the other major broker-dealers refused to continue to support the auctions. (¶¶ 4, 38.) As a result of the withdrawal of support by all of the major broker-dealers, the market for ARS collapsed, rendering more than $300 billion of outstanding ARS illiquid. (¶¶ 4, 39.)

### III. OVERVIEW OF APPLICABLE LAW

The PSLRA sets forth the procedure for appointing the lead plaintiff in a securities class action. The first step requires providing notice to members of the putative class of the pendency of a class action, the claims asserted, and the purported class period. Specifically, the PSLRA provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).[4]

The PSLRA also sets out the requirements for selection of a lead plaintiff to oversee class actions brought pursuant to the federal securities laws. 15 U.S.C. § 78u-4(a)(3). There is a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the person who:

> (aa) has either filed the complaint or made a motion in response to [aforementioned] notice . . .;

---

[4] 15 U.S.C. § 78u-4 amends the Securities Exchange Act of 1934 (the "Exchange Act") to adopt the PSLRA's provisions.

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, the Movant satisfies each of the PSLRA's statutory requirements to serve as Lead Plaintiff here.

## IV. THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA establishes a two-step process for resolving lead plaintiff and consolidation issues when multiple actions asserting substantially the same claims on behalf of a class have been filed. A court must first decide the consolidation motion and then decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Consolidation of actions pursuant to Fed. R. Civ. P. 42(a) is appropriate when the actions involve common questions of law and fact. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Under Rule 42(a), this Court has broad discretion to determine whether consolidation is appropriate, "and in making this determination, [is] to consider whether judicial economy favors consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *Walker v. Deutsche Bank, AG*, No. 04 Civ. 1921 (DAB), 2005 WL 2207041, at *2 (S.D.N.Y. Sept. 6, 2005) ("[S]o long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate.") (alteration in original) (citation and quotation marks omitted); *see also Johnson*, 899 F.2d at 1285. It is "well recognized" that the "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs." *Kaplan*, 240 F.R.D. at 91 (quoting *In re Olsten Corp Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998)).

Presently pending before this Court are three related securities class action cases:

5

| Case Name | Case No. |
|---|---|
| *LHB Insurance Brokerage Inc. v. Citigroup, Inc.* | No. 1:08-CV-03095-LTS |
| *Swanson v. Citigroup, Inc.* | No. 1:08-CV-03139-LTS |
| *Wedgewood Tacoma LLC v. Citigroup Inc.* | No. 1:08-CV-04360-UA |

All of the Actions arise from the same set of operative facts and alleged course of conduct by Defendants involving the sale of ARS to investors, and raise the same legal issues pursuant to Sections 10(b) and 20(a) of the Exchange Act.[5] Thus, the Actions, and any related actions that are subsequently filed in this District or transferred to this District, should be consolidated.

The selection of lead plaintiff and lead counsel is the necessary first step to begin prosecution of the Actions. Therefore, the PSLRA contemplates a ninety-day period from the early notice publication to the selection of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). Because the PSLRA explicitly ties the selection of a lead plaintiff to the consolidation of related actions, the Movant respectfully requests that this Court grant the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Fed. R. Civ. P. 42(a).

## V.    THE MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

The PSLRA provides guidelines for the appointment of a lead plaintiff in "each private action arising under [the securities laws] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). Because the Movant is the "most

---

[5] The Actions assert slightly different class period starting dates: *LHB* alleges March 26, 2003; *Swanson* alleges March 27, 2003; and *Wedgewood Tacoma* alleges May 8, 2003. Additionally, the *Wedgewood Tacoma* action asserts a claim pursuant to the Investment Advisors Act of 1940, 15 U.S.C. §80b-1, *et seq.* *See Kaplan*, 240 F.R.D. at 91 ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation."); *In re Olsten Corp Sec. Litig.*, 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998) (noting that "the facts and legal issues need not be identical to warrant consolidation.")

adequate" plaintiff, as defined by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), he should be appointed as Lead Plaintiff for the class.

### A. The Movant's Motion to Serve as Lead Plaintiff Is Timely

Within sixty days after the publication of a notice of a class action, any person or group of persons that is a member of the proposed class may move the Court to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Here, the earliest notice of a class action regarding Defendants was published on March 27, 2008. (*See* Speirs Aff., Ex. A.) As a purchaser of ARS from Defendants, the Movant is a member of the proposed class and has timely moved for appointment as Lead Plaintiff within sixty days of the notice, in compliance with the PSLRA.[6] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). The Movant therefore satisfies the PSLRA's initial requirement.

### B. The Movant Is Believed to Have the Largest Financial Interest in the Relief Sought by the Class

Pursuant to the PSLRA, this Court should next determine which lead plaintiff applicant has the "largest financial interest" in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Although the PSLRA does not specifically indicate the manner in which the "largest financial interest" should be calculated, it provides that a plaintiff's damages in any securities fraud class action may not exceed:

> [T]he difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

15 U.S.C. § 78u-4(e)(2).

---

[6] The PSLRA does not require the Movant to have filed a complaint against Defendants. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa) (instructing that the most adequate plaintiff will have *either* filed the complaint or made a motion for appointment as lead plaintiff).

7

Alternatively, when a plaintiff continues to hold the security that is the subject of the action, damages may not exceed:

> [T]he difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1).

The Movant believes at this time that he has the "largest financial interest" in the relief sought by the class. During the Class Period, he purchased $10,950,000 of ARS. (*See* Speirs Aff., Ex. C (Dr. Passidomo's Certification).) There is currently no auction market for these securities, therefore they are illiquid and the Movant continues to hold all of his securities. Thus, given his significant financial interest, the Movant believes that he satisfies the PSLRA's second requirement for appointment as Lead Plaintiff. Pursuant to the PSLRA, the movant with the greatest financial interest is, in fact, *presumptively* the "most adequate" to serve as Lead Plaintiff. *See Albert Fadem Trust*, 239 F. Supp. 2d at 347. Once the movant with the *largest* financial interest is determined, the inquiry ends and the Court must look *no further* at the other lead plaintiff candidates unless the adequacy and typicality the presumptive lead plaintiff is rebutted. *See Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004).

**C. The Movant Satisfies the Typicality and Adequacy Requirements of Rule 23**

In addition to meeting the PSLRA's requisites set forth above, a lead plaintiff must also satisfy the requirements of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

For purposes of appointing a lead plaintiff, however, a wide-ranging analysis under Fed. R. Civ. P. 23 is not appropriate at this stage of the litigation. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004). All that is required is a "preliminary showing" that the proposed lead plaintiff will satisfy the requirements of typicality and adequacy. *Id.*; *Albert Fadem Trust*, 239 F. Supp. 2d at 347. As discussed below, Dr. Passidomo satisfies both the typicality and adequacy requirements of Rule 23(a), further supporting his appointment as Lead Plaintiff.

1. The Movant's Claims Are Typical of the Claims of the Class

Pursuant to Fed. R. Civ. P. 23(a), the claims or defenses of the representative party must be typical of those of the class. "Typicality exists if claims 'arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Pirelli*, 229 F.R.D. at 412 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)). The claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Id.*

The Movant satisfies the typicality requirement of Fed. R. Civ. P. 23(a). The Movant's claims and the class' claims arise from damages sustained due to the same alleged course of conduct by Defendants during the Class Period. Further, the Movant and class members assert the same violations of federal securities laws.

2. The Movant Will Fairly and Adequately Represent the Interests of the Class

Under Fed. R. Civ. P. 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." *Pirelli*, 229 F.R.D. at 412. To "satisfy the adequacy

9

requirement . . . . '(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation.'" *Sofran*, 220 F.R.D. at 402-03 (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003)).

Dr. Passidomo's interests are aligned with — and certainly are not antagonistic to — the interests of the other class members. The Movant, like the other class members, is a victim of Defendants' alleged fraud and sustained damaged when the truth about the ARS market was revealed to investors. Due to his significant financial stake in the Actions, interest in prosecuting the Actions, and choice of proposed Lead Counsel, it is clear that Dr. Passidomo will vigorously prosecute the claims against Defendants and protect the interests of the class.

## VI.  THE COURT SHOULD APPROVE THE MOVANT'S CHOICE OF LEAD COUNSEL

Pursuant to the PSLRA, the lead plaintiff is permitted, subject to the Court's approval, to select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). Dr. Passidomo has selected and retained Zwerling, Schachter & Zwerling, LLP ("Zwerling, Schachter") to represent him and serve as lead counsel for the putative class. Zwerling, Schachter has extensive experience in the areas of securities class action litigation and other complex litigation, and has been responsible for significant successful results on behalf of injured investors in numerous securities class action lawsuits, as well as legal decisions that enable litigation such as this to be successfully prosecuted. (*See* Speirs Aff., Ex. D.)

## VII. CONCLUSION

For the foregoing reasons, the Movant respectfully requests that the Court: (1) consolidate the Actions; (2) grant his motion for appointment as Lead Plaintiff; and (3) approve his choice of Zwerling, Schachter as Lead Counsel for the putative class.

Dated: May 27, 2008

        Respectfully submitted,

        **ZWERLING, SCHACHTER**
         **& ZWERLING, LLP**

        By:   s/ Richard A. Speirs
           Richard A. Speirs (RS 8872)
           Paul Kleidman (PK 5209)
           41 Madison Avenue, 32nd Floor
           New York, NY 10010
           Tel: (212) 223-3900
           Fax: (212) 371-5969
           rspeirs@zsz.com
           pkleidman@zsz.com

        *Proposed Lead Counsel for Lead Plaintiff*
        *Movant Dr. Michael A. Passidomo and the*
        *Class*

        CRIDEN & LOVE, P.A.
        Michael E. Criden
        7301 S.W. 57th Court, Suite 515
        South Miami, FL 33143
        Tel.: (305) 357-9000
        Fax: (305) 357-9050
        mcriden@cridenlove.com