# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LHB INSURANCE BROKERAGE INC., on behalf of itself and all others similarly situated, | **ECF CASE** |
| Plaintiff, | Civil Case No: 1:08-CV-03095-LTS |
| v. | |
| CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC., | |
| Defendants. | |
| LISA SWANSON, Individually And On Behalf of All Others Similarly Situated, | **ECF CASE** |
| Plaintiff, | Civil Case No: 1:08-CV-03139-LTS |
| v. | |
| CITIGROUP, INC., CITIGROUP GLOBAL MARKETS, INC. and CITI SMITH BARNEY, | |
| Defendants. | |

[Additional Captions to Follow]

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION OF DR. PASSIDOMO FOR CONSOLIDATION
AND FOR APPOINTMENT OF LEAD PLAINTIFF AND
LEAD COUNSEL, AND IN REPLY TO COMPETING MOTIONS**

| | |
|---|---|
| SAMUEL A. STOCKHAMER and ALICE L. STOCKHAMER, On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CITIGROUP INC. and CITIGROUP GLOBAL MARKETS, INC., <br><br> Defendants. | **ECF CASE** <br><br> Civil Case No: 1:08-CV-03904-LTS |
| WEDGEWOOD TACOMA LLC, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY, <br><br> Defendants. | **ECF CASE** <br><br> Civil Case No: 1:08-CV-04360-LTS |
| SAED GHALAYINI, Individually And On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CITIGROUP INC., CITIGROUP GLOBAL MARKETS, INC., and CITI SMITH BARNEY, <br><br> Defendants. | **ECF CASE** <br><br> Civil Case No: 1:08-CV-05016-UA |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. DR. PASSIDOMO SHOULD BE APPOINTED LEAD PLAINTIFF ................................ 2

    A. Dr. Passidomo Is Presumptively The Most Adequate Lead Plaintiff .............................. 2

    B. The Wedgewood Group Fails to Rebut Dr. Passidomo's Adequacy .............................. 3

        1. Claims Regarding Unrelated, Long-Resolved Administrative Proceedings
           Do Not Render Dr. Passidomo Inadequate .............................................................. 3

        2. The Wedgewood Group Mischaracterizes the Nature and Scope of the
           Administrative Charges .......................................................................................... 5

III. THE ACTIONS SHOULD BE CONSOLIDATED ......................................................... 10

## TABLE OF AUTHORITIES

Cases

*Albert Fadem Trust v. Citigroup, Inc.*,
  239 F. Supp. 2d 344 (S.D.N.Y. 2002) ........................................................................................ 2

*German v. Federal Home Loan Mortgage Corp.*,
  168 F.R.D. 145 (S.D.N.Y. 1996) ............................................................................................ 4, 5

*In re Initial Public Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) ................................................................................................ 4

*In re Leapfrog Enterprises, Inc. Sec. Litig.*,
  No. C-03-05421 RMW, 2005 WL 3801587 (N.D. Cal. Nov. 23, 2005) ................................ 8, 9

*In re Olsten Corp Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ......................................................................................... 10

*Jane B. ex rel. Martin v. New York City Dep't of Social Services*,
  117 F.R.D. 64 (S.D.N.Y. 1987) .................................................................................................. 4

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................................ 10

*Koppel v. 4987 Corp.*,
  191 F.R.D. 360 (S.D.N.Y. 2000) ....................................................................................... 4, 5, 8

*Newman v. Eagle Building Technologies*,
  209 F.R.D. 499 (S.D. Fla. 2002) ................................................................................................ 9

*Passidomo v. Kentucky*,
  No. 2002-CA-002326-MR, 2003 WL 22872342 (Ky. Ct. App. Dec. 5, 2003) .......................... 7

*Pinkowitz v. Elan Corp., PLC*,
  No. 02 Civ. 865 (WK), 2002 WL 1822118 (S.D.N.Y. July 29, 2002) .................................... 10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................... 2, 8

*Rocco. v. Nam Tai Electronics, Inc.*, ....................................................................................... 4
  245 F.R.D. 131 (S.D.N.Y. 2007)

*Sofran v. LaBranche & Co., Inc.*,
  220 F.R.D. 398 (S.D.N.Y. 2004) ................................................................................................ 3

*Utopia Entertainment, Inc., v. Claiborne Parrish*,
  No. Civ.A. 03-1355, 2006 WL 548476 (W.D. La. Mar. 6, 2006) .............................................. 8

*Velez v. Novartis Pharmaceuticals Corp.*,
  244 F.R.D. 243 (S.D.N.Y. 2007) ............................................................................................... 4

*Weisman v. Darneille*,
  78 F.R.D. 669 (S.D.N.Y. 1978) ................................................................................................. 8

*Xianglin Shi v. Sina Corp.*,
  No. 05 Civ. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y July 1, 2005) ...................................... 8

*Zemel Family Trust v. Phillips Int'l Realty Corp.*,
  205 F.R.D. 434 (S.D.N.Y. 2002) ............................................................................................... 9

Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii) ....................................................................................................... 2

**I.     INTRODUCTION**

Dr. Michael A. Passidomo (the "Movant" or "Dr. Passidomo") hereby submits this memorandum of law in further support of his motion for consolidation, appointment as Lead Plaintiff and approval of his selection of Zwerling, Schachter, & Zwerling, LLP ("Zwerling, Schachter") to serve as Lead Counsel, and in reply to the oppositions submitted by the Wedgewood Group (consisting of the Wedgewood Tacoma LLC and Jemstone LLC movants) and the Stockhamer Group (consisting of Samuel A. Stockhamer and Alice L. Stockhamer).

For over seventeen years, until health reasons forced him to retire in 1997, Dr. Passidomo provided neurological services to poor and indigent patients in rural Kentucky. (*See* Speirs Reply Decl. Ex. A (Affidavit of Dr. Michael A. Passidomo) ¶¶ 6, 7.)[1]  During that time he performed thousands of procedures for which he received only partial reimbursement. (*Id.* ¶ 7.) The Wedgewood Group, without full knowledge of the facts, seizes upon two administrative proceedings involving just a tiny fraction of Dr. Passidomo's medical decisions from over fifteen years ago, then engages in a series of irrelevant *ad hominem* attacks on his character – going so far as to baselessly accuse him of fraud.  The Court should recognize the Wedgewood Group's attacks for what they are – a desperate attempt to tarnish Dr. Passidomo's ability to serve as Lead Plaintiff because it cannot challenge his uncontested financial interest in this matter.  The case law is clear – absent relevant criminal convictions or misconduct related specifically to the subject matter of this securities case, Dr. Passidomo satisfies the threshold burden of adequacy required under the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Accordingly, Dr. Passidomo's motion for appointment as Lead Plaintiff, and his selection for Lead Counsel,

---

[1] "Speirs Reply Decl." refers to the Declaration of Richard A. Speirs in Further Support of the Motion of Dr. Passidomo for Consolidation and for Appointment of Lead Plaintiff and Lead Counsel, and in Reply to Competing Motions, dated June 20, 2008.

should be approved.[2]

## II.    DR. PASSIDOMO SHOULD BE APPOINTED LEAD PLAINTIFF

### A.  Dr. Passidomo Is Presumptively The Most Adequate Lead Plaintiff

It is undisputed that during the Class Period Dr. Passidomo purchased $10,950,000 of Auction Rate Securities ("ARS"), all of which he continues to hold. (*See* Speirs Aff. Ex. C.)[3] Thus, his financial interest in ARS is greater than the losses reported by all of the competing movants ***combined***, and more than $7 million larger than that reported by the Wedgewood Group, the movant with next largest financial interest.[4]

Dr. Passidomo also satisfies the PSLRA requirement of a "preliminary showing" of typicality and adequacy under Rule 23(a) of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Namely, he claims to have sustained damages from the same alleged course of conduct and the same violations of the federal securities laws as the other class members, and his interests are aligned with — and certainly are not antagonistic to — the interests of the other class members. Dr. Passidomo, who is a retired neurologist, has

---

[2] The LHB Insurance Group did not file an opposition. The Dignam Group submitted a statement of non-opposition to Dr. Passidomo's motion, conceding that he is the most adequate lead plaintiff.

[3] "Speirs Aff." refers to the Affidavit of Richard A. Speirs in Support of the Motion of Dr. Michael A. Passidomo for Consolidation and for Appointment of Lead Plaintiff and Lead Counsel, dated May 27, 2008.

[4] Even considering potential redemptions, Dr. Passidomo's financial interest remains well-above that of all of the other movants ***combined***. (*See* Memorandum of Law in Further Support of the Motion of Dr. Michael A. Passidomo for Consolidation and for Appointment of Lead Plaintiff and Lead Counsel, and in Opposition to Competing Motions, dated June 16, 2008 ("Pl.'s Opp. Br.") at 1-3.)

approximately 80% of his net worth invested in ARS. (*See* Speirs Reply Decl. Ex. A ¶ 3.)[5] Due to his significant financial stake in this litigation, interest in prosecuting this matter, and choice of proposed Lead Counsel, it is clear that Dr. Passidomo will vigorously prosecute the claims against Defendants and protect the interests of the Class. (*See* Pl.'s Br. at 8-10.)[6]

### B. The Wedgewood Group Fails to Rebut Dr. Passidomo's Adequacy

#### 1. Claims Regarding Unrelated, Long-Resolved Administrative Proceedings Do Not Render Dr. Passidomo Inadequate

For purposes of establishing adequacy at this preliminary juncture, Dr. Passidomo needs only to make a preliminary showing of the absence of any conflicting interest between himself and the other class members, the absence of collusion with Defendants, and his attorneys' qualifications to ably prosecute the instant matter. *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 402-03 (S.D.N.Y. 2004). The Wedgewood Group's effort to disqualify Dr. Passidomo based on administrative reviews relating to medical determinations he made over fifteen years ago, do not remotely touch upon these factors. Indeed, those long-resolved issues are so tenuous and unrelated they should be rejected by this Court under clear precedent, particularly on a Lead Plaintiff motion. Those matters did not involve investing in securities, any of the parties or counsel in this matter, or any interests that conflict with the Class.

As one court in this District as explained in the more stringent class certification context:

---

[5] The Wedgewood Group's totally unsubstantiated innuendo that there are "doubts" regarding "the accuracy of his reported financial interest and other information he has submitted to the Court" should not even be entertained by the Court. (*See* Memorandum of Law in Further Support of the Motion of Wedgwood Tacoma LLC and Jemstone LLC for Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel, and in Opposition to Competing Motions, dated June 16, 2008 ("Wedgewood Opp.") at 2.)

[6] "Pl.'s Br." refers to the Memorandum of Law in Support of the Motion of Dr. Michael A. Passidomo for Consolidation and for Appointment of Lead Plaintiff and Lead Counsel, dated May 27, 2008.

> To defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems "could become the focus of cross-examination and unique defenses at trial, to the detriment of the class." Plaintiffs' testimony or credibility that is subject to attack must be "on an issue critical to one of their . . . causes of action."

*German v. Federal Home Loan Mortgage Corp.*, 168 F.R.D. 145, 154 (S.D.N.Y. 1996) (alteration in original) (first citation omitted) (quoting *Kline v. Wolf,* 702 F.2d 400, 403 (2d Cir. 1983)); *see also Koppel v. 4987 Corp.*, 191 F.R.D. 360, 368 (S.D.N.Y. 2000) (noting that class representative's "alleged misconduct" was "too unsubstantiated and attenuated, in time and subject matter, to seriously call into question his ability to pursue this litigation and protect the interests of the proposed class."); *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (noting that the showing of adequacy and typicality are significantly less demanding for lead plaintiffs than for class representatives).  Indeed, one court in this District recently concluded, where a proposed class representative's driver's license was suspended over ten years earlier after a DUI conviction:

> Ward's criminal history as a whole, then, is irrelevant to this securities fraud case. For these reasons, Ward's criminal history will not be considered as evidence of his inadequacy to represent this class.

*Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 137 (S.D.N.Y. 2007).

Thus, any adequacy challenge relating to a representative plaintiff's credibility must pertain specifically to matters raised in the litigation. *See Velez v. Novartis Pharmaceuticals Corp.*, 244 F.R.D. 243, 270 (S.D.N.Y. 2007) ("Plaintiffs' testimony or credibility that is subject to attack must be on an issue critical to one of their causes of action.") (citation omitted).  "The inquiry, then, into the representatives' personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." *Jane B. ex rel. Martin v. New York City*

4

*Dep't of Social Services*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987) (citations omitted).  As such, "in the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's . . . credibility are rarely appropriate."  *Koppel*, 191 F.R.D. at 369 (quoting *In re Frontier Ins. Group, Inc., Sec. Litig.*, 172 F.R.D. 31, 46 (E.D.N.Y. 1997)); *see also German*, 168 F.R.D. at 155 ("most courts have rejected challenges to adequacy based on allegations that plaintiffs backgrounds were alleged to include 'unrelated unsavory, unethical, or even illegal conduct.'" (quoting 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:36 (3d ed. 1992))).

The stale administrative charges against Dr. Passidomo do not arise out of or touch upon the instant matter or even remotely concern his investment in ARS.  Further, the charges themselves, which relate to medical determinations, do not reflect upon Dr. Passidomo's ability to serve as a class representative.  Accordingly, the Wedgewood Group's reliance on Dr. Passidomo's long-since resolved administrative charges amounts to nothing more than a character assault.

    **2. The Wedgewood Group Mischaracterizes the Nature and Scope of the Administrative Charges**

In its effort to taint Dr. Passidomo's adequacy, the Wedgewood Group mischaracterizes Dr. Passidomo's prior conduct as "fraudulent," notwithstanding that no such charge was ever made.  (*Compare* Wedgewood Opp. at 7 ("would have amounted to fraud had it occurred in New York") *with* Bronson Decl. Ex. E ("[o]rdering of excessive tests, treatment, or use of treatment facilities not warranted by the condition of the patient").)[7]  To do so, the Wedgewood Group

---

[7] "Bronson Decl." refers to the Declaration of Kent A. Bronson in Further Support of the Motion of Wedgwood Tacoma LLC and Jemstone LLC for Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel, and in Opposition to Competing Motions, dated June 16, 2008.

ignores both the *actual* claims and the voluntary nature of his choice to suspend medical licenses in states where he did not actively practice medicine.[8]  In sum, the administrative issues involving Dr. Passidomo boil down to two long-resolved cases involving medical determinations he made over fifteen years ago.  In fact, over the course of thousands of medical scans and procedures performed by Dr. Passidomo over the years, these few claims called into question represent just a fraction of his nearly two decades of practice.  (*See* Speirs Reply Decl. Ex. A ¶¶ 6-7.)

In 1994, the Commonwealth of Kentucky, State Board of Medical Licensure (the "Kentucky Board") claimed that: "on or between November of 1985 and April of 1991, [Dr. Passidomo] treated and examined thirty-four (34) patients in such a manner so as to constitute a pattern of overutilization and expensive technology."  (Bronson Decl. Exs. E, F.)  That proceeding ultimately resulted in an agreed order placing his license to practice medicine in Kentucky on probation for a period of three years, which was subsequently reduced to six months.  (*See* Bronson Decl. Ex. F.)[9]  In March 1995, on account of the charges levied by the Kentucky Board, he voluntarily agreed with the New York State Department of Health to a three month suspension of his long-dormant New York medical license.  (*See* Bronson Decl. Exs. E,

---

[8] As even the Wedgewood Group must concede (*see* Bronson Decl. Ex. F), neither West Virginia nor Virginia filed any charges – administrative, civil or criminal – against Dr. Passidomo.  He chose, voluntarily, to relinquish his licenses to practice medicine in those states, where he held licenses but never practiced.  (*See* Speirs Reply Decl. Ex. A ¶ 5.)  Further, Dr. Passidomo neither lost nor suspended his license to practice in Florida, where he did not practice medicine after commencing his medical practice in Kentucky.

[9] Contrary to the Wedgewood Group's assertion, Dr. Passidomo's license to practice medicine in Kentucky was never suspended.  (*See* Bronson Decl. Ex. F.)

F.) Subsequently, upon his retirement, he voluntarily surrendered his New York medical license in lieu of that sanction.[10] (*See* Bronson Decl. Exs. F, H; Speirs Reply Decl. Ex. A ¶ 5.)

Dr. Passidomo's second case involved a dispute with the Kentucky Cabinet for Health Services ("KCHS") over claims he submitted for Magnetic Resonance Imaging services from March 1, 1992 through June 30, 1993. *See Passidomo v. Kentucky*, No. 2002-CA-002326-MR, 2003 WL 22872342, at *1 (Ky. Ct. App. Dec. 5, 2003); (*see also* Bronson Decl. Ex. I.)[11] Dr. Passidomo vigorously contested KCHS' administrative denial of those claims through a long course of administrative hearings and multiple civil appeals, and for years after his retirement. *Passidomo*, 2003 WL 22872342, at *1-2. Ultimately – and long after Dr. Passidomo's retirement in 1997 – the KCHS and Dr. Passidomo resolved the dispute upon a final disposition from the Kentucky Court of Appeals in 2003.[12]

Accordingly, the substance of the administrative charges here dealt with complex matters of medical discretion involving patient care that have long-since been resolved. Those proceedings have no connection whatsoever to the instant matter or to Dr. Passidomo's significant interest in this case, nor do they even touch upon his adequacy as a representative of the Class. Other courts have recognized the ability of the presumptive lead plaintiff to adequately represent the class even in the face of resolved past disputes with licensing agencies

---

[10] The Wedgewood Group misleadingly states that in 1997 Dr. Passidomo "consented to *additional* sanctions in connection with the New York State Department of Health charges." (Wedgwood Opp. at 8 (emphasis added).) However, the Wedgewood Group's own exhibit clearly shows that his application to surrender his license was specifically approved of as a "modification" of the earlier agreement with the Department of Health (*i.e.* pertaining to Order #BPMC 95-66), not "a new or additional disciplinary action"). (*See* Bronson Decl. Exs. F, H.)

[11] KCHS maintained that there was no medical necessity for the performance of contrast-enhanced MRI scans for certain Medicaid recipients. *Passidomo*, 2003 WL 22872342, at *1-2.

[12] Dr. Passidomo submits that his tenacity in opposing these administrative findings in multiple tribunals for years after he retired demonstrates that he would be a zealous advocate for the Class.

involving regulatory bodies in the U.S. *securities industry.  See e.g.*, *Pirelli*, 229 F.R.D. at 416 (notwithstanding a 1992 censure by the Chicago Mercantile Exchange, finding plaintiff broker suitable to act as lead plaintiff); *In re Leapfrog Enterprises, Inc. Sec. Litig.*, No. C-03-05421 RMW, 2005 WL 3801587, at *4 (N.D. Cal. Nov. 23, 2005) (finding proposed lead plaintiff with $10 million financial interest adequate despite entering into a cease and desist order with the SEC 10 years earlier).  Hence, any contentions about his adequacy stemming from these unrelated, dated administrative proceedings should be flatly rejected as irrelevant.  *See, e.g.*, *Pirelli*, 229 F.R.D. at 417 (rejecting adequacy challenge and noting "the absence of any specific connection between the types of violations claimed and the . . . fraud alleged here."); *Koppel*, 191 F.R.D. at 368.

  The Wedgewood Group's cited authority is factually inapposite, as all of those cases involved movants that were *criminally* convicted.  (*See* Wedgewood Opp. at 8-9 (citing *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154 (NRB), 2005 WL 1561438, at *4 (S.D.N.Y July 1, 2005) (denying lead plaintiff group that was led by "a convicted felon who pled guilty . . . to providing false information to a financial institution."); *Utopia Entertainment, Inc., v. Claiborne Parrish*, No. Civ.A. 03-1355, 2006 WL 548476, at *1 (W.D. La. Mar. 6, 2006) (although noting that "[u]nder the reasoning of *Xianglin SHI* . . . felony convictions do not *necessarily* preclude" a person from serving as a class representative, the court refused to appoint a convicted felon as class representative); *Weisman v. Darneille*, 78 F.R.D. 669, 670 (S.D.N.Y. 1978) (rejecting adequacy of proposed class representative criminally "convicted of violating Section 10(b), the very statute he invokes here.")).)  Indeed, where courts have refused to appoint representative plaintiffs who have suffered other sanctions for prior conduct, they have done so where the plaintiff's misconduct pertained to the claims asserted, such as cases where plaintiffs have sought

to lead securities class actions despite having previously violated the securities laws. *See, e.g.*, *Zemel Family Trust v. Phillips Int'l Realty Corp.*, 205 F.R.D. 434, 436 (S.D.N.Y. 2002) (class representative was inadequate due to his involvement in activities subject to SEC cease and desist order and called "to mind the nature of the very claim that plaintiff alleges in this case"); *Newman v. Eagle Building Technologies*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (holding that individual cited for serious violations of SEC and NASD rules was not permitted to remain in a group subsequently appointed lead plaintiff). No such impediment exists here.

Simply put, Dr. Passidomo is the most adequate plaintiff, having by far the largest financial interest among the competing movants and otherwise satisfying the requisite requirements of typicality and adequacy. Questions about medical decisions he made over fifteen years ago should not, and do not, cast doubt upon his ability to represent investors, like himself, who lost money from the Defendants' alleged securities law violations. *See In re Leapfrog*, 2005 WL 3801587, at * 4.

It should be noted, however, that the salacious attack of Dr. Passidomo's character is waged by movants that have retained Milberg LLP, a law firm that, as late as this week, was under federal indictment for charges relating to the same type of case and proceeding currently before the Court. (*See* Pl.'s Opp. Br. at 6-8.) At minimum, that decision should call into question the Wedgewood Group's discretion and adequacy to serve as fiduciaries of the Class. (*Id.*) It should also be pointed out that while the charges against Milberg LLP have reportedly been dropped, the terms of the agreement allegedly require the firm to pay a significant fine and submit to a lengthy monitorship. Moreover, any such agreement does not protect Milberg LLP from further prosecution or civil suit relating to its prior conduct. Accordingly, concerns about

9

Milberg LLP's viability and the potential for serious distractions stemming from any further litigation may continue well into the future.

### III.  THE ACTIONS SHOULD BE CONSOLIDATED

The Stockhamer Group argues that its action (*Stockhamer v. Citigroup, Inc.*, No. 1:08-cv-3904) should not be consolidated because it asserts claims only under the Investment Advisers Act of 1940 ("IAA") and common law rather than under the Exchange Act. (*See* Stockhamer Opp. at 1-2.)[13] However, a different cause of action alone does not militate against consolidation "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *In re Olsten Corp Sec. Litig.*, 3 F. Supp. 2d 286, 293 (E.D.N.Y. 1998) (noting that "the facts and legal issues need not be identical to warrant consolidation.").

Here, all of the actions arise from the same set of operative facts involving the sale of ARS to investors. Thus, significant overlap will remain between the Actions and, thus, evince the efficacy of consolidating the related Actions. *See Pinkowitz v. Elan Corp., PLC*, No. 02 Civ. 865 (WK), 2002 WL 1822118, at *3-4 (S.D.N.Y. July 29, 2002) (ordering consolidation despite the existence of one case that brought claims pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 rather than the Exchange Act).[14]

For the foregoing reasons, the Movant respectfully requests that the Court grant this Motion.

---

[13] "Stockhamer Opp." refers to Samuel A. Stockhamer's and Alice L. Stockhamer's Plaintiffs in *Stockhamer, et al. v. Citigroup, Inc., et al.*, Memorandum of Law in Opposition to Motions for Consolidation, appointment of Lead Plaintiff and Selection of Lead Counsel and in Support of Coordination, dated June 16, 2008.

[14] As conceded by the Stockhamer Group, *Wedgewood Tacoma LLC v. Citigroup Inc.*, No. 1:08-CV-04360-LTS also asserts a claim pursuant to the IAA. (*See* Stockhamer Opp. at 3.) The Wedgewood Group supports the consolidation of the Actions. (*See* Wedgewood Opp. at 3.)

Dated:  June 20, 2008

        Respectfully submitted,

        **ZWERLING, SCHACHTER**
          **& ZWERLING,** LLP

        By: ___/s/ Richard A. Speirs_____
           Richard A. Speirs (RS 8872)
           Paul Kleidman (PK 5209)
           41 Madison Avenue, 32nd Floor
           New York, NY 10010
           Tel:  (212) 223-3900
           Fax:  (212) 371-5969
           rspeirs@zsz.com
           pkleidman@zsz.com

        *Proposed Lead Counsel for Lead Plaintiff*
        *Movant Dr. Michael A. Passidomo*
        *and the Class*

        CRIDEN & LOVE, P.A.
        Michael E. Criden
        7301 S.W. 57th Court, Suite 515
        South Miami, FL 33143
        Tel.:  (305) 357-9000
        Fax:  (305) 357-9050
        mcriden@cridenlove.com